UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED BULL NORTH AMERICA, INC. and RED BULL GMBH LIMITED LIABILITY COMPANY, | No. 07-CV-6112T(P) |
| Plaintiffs, | |
| vs. | |
| SOHO EAST AVENUE INC., 289 ALEXANDER STREET INC., DAVIS COWDEN INC., 336 DUKES INC., RDCUSE INC., and RONALD A. DAVIS, | |
| Defendants. | |

## RED BULL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWER

# TABLE OF CONTENTS

Page

I.   DEFENDANTS LACK THE REQUISITE "GOOD CAUSE" TO AMEND THEIR ANSWER AFTER THE DEADLINE...................................................2

    A.   The Rule 16(b) "Good Cause" Standard Applies, and Focuses on Diligence, Not Prejudice. ...........................................................2

    B.   Defendants Were Not Diligent Prior to the July 30, 2007 Deadline. .................3

    C.   Defendants Have Not Learned Anything New Since the July 30, 2007 Deadline That Would Provide Them With "Good Cause."........................6

        1.   The "New" Information Is Not Actually "New." ...................................6

        2.   Defendants Would Have Had Red Bull's Initial Disclosure Documents Before July 30, 2007 If They Had Acted Diligently By Simply Asking Red Bull For Them. ................................7

II.   DEFENDANTS UNDULY DELAYED IN SEEKING LEAVE TO ASSERT THEIR PROPOSED AFFIRMATIVE DEFENSES, AND RED BULL WILL BE UNDULY PREJUDICED IF THE AMENDMENT IS ALLOWED...................................................................................8

    A.   Defendants Unduly Delayed In Seeking Leave To Assert Their Proposed Affirmative Defenses. ...........................................................8

    B.   Red Bull Will Be Unduly Prejudiced If The Amendment Is Allowed...............................................................................................9

        1.   If Amendment Is Allowed, Red Bull Will Be Required To Expend Significant Additional Resources To Conduct Discovery And Prepare For Trial.................................................9

        2.   If Amendment Is Allowed, The Resolution Of The Dispute Risks Significant Delays. ......................................................10

III.   LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE AMENDMENT WILL BE FUTILE....................................................11

    A.   Defendants' Unclean Hands Bar Their Proposed Equitable Defenses.......................................................................................11

    B.   Defendants' Actions Are Not A Fair Use Of The RED BULL® Trademark (Third Affirmative Defense). ..........................................12

    C.   Red Bull's Hands Are Clean (Fourth Affirmative Defense). ............................13

    D.   Red Bull Brought Its Lawsuit Within the Six Year Statute of Limitations (Sixth Affirmative Defense)...........................................14

    E.   Red Bull Pursued Its Claims in a Timely Manner And Is Not Barred By the Doctrine of Laches (Fifth Affirmative Defense). ......................15

          1.       Red Bull Did Not "Inexcusably Delay In Taking Action." ................... 16

          2.       Defendants Were Not Prejudiced By Any Delay. ................................ 16

   F.      Red Bull Is Entitled to the Damages It Seeks .................................................... 17

          1.       Red Bull Is Entitled To Recover Monetary Damages
                 (Eleventh Affirmative Defense).............................................................. 17

          2.       Red Bull Is Entitled To Punitive Damages (Eighth
                 Affirmative Defense). ............................................................................ 18

          3.       Regardless Of How Red Bull Markets Its Product, Red Bull
                 Has Been Damaged By Defendants' Conduct (Seventh
                 Affirmative Defense). ............................................................................ 19

   G.     RED BULL® Is A Protected Trademark, Even When RED BULL®
        Is Ordered With Another Beverage (Tenth Affirmative Defense). .................... 20

IV.    CONCLUSION.......................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Alberto-Culver Company v. Andrea Dumon, Inc.*,
466 F.2d 705 (7th Cir. 1972) ................................................. 13

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
58 F.3d 849 (2d Cir. 1995) ................................................. 19

*Block v. First Blood Associates*,
988 F.2d 344 (2d Cir. 1993) ................................................. 9

*Board of Managers of Soho International Arts Condominium v. City of New York*,
2003 WL 21403333 (S.D.N.Y. 2003) ................................................. 15

*Carell v. Shubert Organization, Inc.*,
104 F.Supp.2d 236 (S.D.N.Y. 2000) ................................................. 15

*Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*,
433 F.2d 686 (2d Cir. 1970) ................................................. 15, 17

*Citibank, N.A. v. Citytrust*,
644 F.Supp. 1011 (E.D.N.Y. 1986) ................................................. 16

*Coca-Cola Co. v. Dorris*,
311 F.Supp. 287 (E.D. Ark. 1970) ................................................. 5, 12, 14, 20

*Coca-Cola Co. v. Old Country Road Diner, Inc.*,
172 U.S.P.Q. 219 (E.D.N.Y. 1971) ................................................. 14

*Coca-Cola Co. v. Overland, Inc.*,
692 F.2d 1250 (9th Cir. 1982) ................................................. 5, 13, 14, 20

*Coca-Cola Co. v. Pace*,
283 F.Supp. 291 (W.D. Ky. 1968) ................................................. 14

*Coca-Cola v. Foods, Inc.*,
220 F.Supp. 101 (D.S.D. 1963) ................................................. 14

*Conopco, Inc. v. Campbell Soup Co.*,
95 F.3d 187 (2d Cir. 1996) ................................................. 14, 15, 16, 17

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*,
125 F.3d 28 (1997) ................................................. 12

*Cuban Cigar Brands N. V. v. Upmann Intern., Inc.*,
457 F.Supp. 1090 (S.D.N.Y. 1978), *aff'd without op.*, 607 F.2d 995 (2d Cir. 1979) ......... 11, 16

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*,
   2005 WL 1164073 (S.D.N.Y. 2005) ................................................................10

*De Medici v. Lorenzo De Medici, Inc.*,
   101 A.D.2d 719 (N.Y.A.D. 1 Dept. 1984) ........................................................15

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*,
   841 F.Supp. 1339 (E.D.N.Y. 1994) ..................................................................17

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,
   228 F.3d 56 (2d Cir. 2000) ........................................................................12, 13

*Fourth Toro Family Ltd. Partnership v. PV Bakery, Inc.*,
   88 F.Supp.2d 188 (S.D.N.Y. 2000) ..................................................................15

*Getty Petroleum Corp. v. Island Transport Corp.*,
   878 F.2d 650 (2d Cir. 1989) ............................................................................18

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*,
   365 F.Supp. 707 (S.D.N.Y. 1973), *modified*, 523 F.2d 1331 (2d Cir. 1975) ............17

*Health-Chemical Corp. v. Baker*,
   915 F.2d 805 (2d Cir. 1990) ............................................................................11

*Hermes Intern. v. Lederer de Paris Fifth Avenue, Inc.*,
   219 F.3d 104 (2d Cir. 2000) ............................................................................11

*Hnot v. Willis Group Holdings Ltd.*,
   2006 WL 23818693 (S.D.N.Y. 2006).............................................................2, 3

*Invest Almaz v. Temple-Inland Forest Products Corp.*,
   243 F.3d 57 (1st Cir. 2001).................................................................................9

*Jones v. N.Y. State Division of Military & Naval Affairs*,
   166 F.3d 45 (2d Cir. 1999) ..............................................................................11

*Kassner v. 2nd Avenue Delicatessen Inc.*,
   496 F.3d 229 (2d Cir. 2007) ..............................................................................2

*Kwan v. Schlein*,
   441 F.Supp.2d 491 (S.D.N.Y. 2006) ................................................................15

*Lincoln v. Potter*,
   418 F.Supp.2d 443 (S.D.N.Y. 2006) ...................................................2, 3, 7, 8, 9

*Link v. Wabash R. Co.*,
   370 U.S. 626 (1962)...........................................................................................8

*Lorillard Tobacco Company v. Yazan's Service Plaza, Inc.*,
   2006 WL 2460766 (E.D. Mich. August 23, 2006) ..............................................8

*Margaret Wendt Foundation Holdings, Inc. v. Roycroft Associates,*
  2007 WL 3015224 (W.D.N.Y. 2007) ......................................................14

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha,*
  218 F.R.D. 667 (C.D. Cal. 2003) ...........................................................8

*McGraw-Hill Companies, Inc. v. Vanguard Index Trust,*
  139 F.Supp.2d 544 (S.D.N.Y. 2001) ....................................................19

*New York Racing Association, Inc. v. Stroup News Agency Corp.,*
  920 F.Supp. 295 (N.D.N.Y. 1996) ........................................................18

*Parker v. Columbia Pictures Industries,*
  204 F.3d 326 (2d Cir. 2000) ..................................................................2

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,*
  317 F.3d 209 (2d Cir. 2003) ................................................................19

*Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp.,*
  215 F.R.D. 100 (S.D.N.Y. 2003) ...........................................................3

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.,*
  926 F.2d 134 (2d Cir. 1991) ................................................................18

*Robinson v. Town of Colonie,*
  1993 WL 191166 (N.D.N.Y 1993) .........................................................7

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Development Fund Co.,*
  608 F.2d 28 (2d Cir. 1979) ..................................................................11

*Samara Brothers, Inc. v. Wal-Mart Stores, Inc.,*
  165 F.3d 120 (2d Cir. 1998), rev'd on other grounds in 529 U.S. 205 (2000) ..........................18

*Stover v. Northland Group, Inc.,*
  2007 WL 1360603 (W.D.N.Y. May 8, 2007)..........................................2

*Toyota Jidosha Kabushiki Kaisha v. Aliments Lexus Inc.,*
  2004 WL 1304054 (E.D.N.Y. 2004) ....................................................15

*Tri-Star Pictures, Inc. v. Unger,*
  14 F.Supp.2d 339 (S.D.N.Y. 1998) .................................................15, 16

## STATUTES

Fed. R. Civ. P. 15(a) .............................................................................2

Fed. R. Civ. P. 16(b) .........................................................................2, 3

15 U.S.C.A. § 1117.........................................................................18, 19

## MEMORANDUM OF LAW

On May 8, 2007, defendants Soho East Avenue, Inc., 289 Alexander Street, Inc., Davis Cowden, Inc., 336 Dukes Inc., RDCuse Inc., and Ronald A. Davis ("Defendants") and Plaintiffs Red Bull North America, Inc. and Red Bull GmbH Limited Liability Company ("Red Bull") jointly submitted a proposed discovery plan, requesting that the Court enter a July 30, 2007 deadline for filing motions to amend the pleadings.  The Court subsequently entered a Scheduling Order, mandating that all motions to amend the pleadings be filed on or before July 30, 2007.  Although this action has been pending since March 2007, Defendants failed to serve any written discovery until October 30, 2007, and failed to request any oral depositions until November 8, 2007.  Until September 25, 2007, Defendants similarly failed to request that Red Bull produce copies of any documents identified in Red Bull's initial disclosures.

Nevertheless, on November 2, 2007, Defendants provided Red Bull with a proposed amended answer.  To be entitled to amend their answer now, Defendants must show that they could not have met the July 30, 2007 deadline despite their diligence.  Given Defendants' failure to conduct any discovery prior to July 30, 2007, Defendants simply cannot meet this standard. Although Defendants attempt to fashion "good cause" out of documents they received in late September 2007, this attempt fails as Defendants would have had these documents before July 30, 2007 if they had acted diligently by simply asking Red Bull for them.  In addition, most of the purported "new" information is actually not "new" at all - the detailed descriptions of documents in Red Bull's May 2007 initial disclosures reveal most of the "new" information, and Defendants had personal knowledge of some of this "new" information when they filed their answer.  Moreover, 6 of the 9 proposed affirmative defenses do not even purport to rely upon the "new" information.  Indeed, the "new" information does not provide the basis for a single valid affirmative defense.

Even if Defendants somehow demonstrate that they could not have met the July 30, 2007 deadline despite their diligence, Defendants' motion should still be denied.  Red Bull will be unduly prejudiced if the amendment is allowed, as the proposed affirmative defenses

dramatically broaden the scope of discovery, increasing the costs of the litigation and threatening further delays in the already extended schedule. In addition, Defendants' own unclean hands bar their newly asserted equitable defenses. Moreover, Defendants' proposed affirmative defenses lack merit, so amendment will be futile. The Court should therefore reject Defendants' attempt to belatedly amend their answer to assert new affirmative defenses.

## I. DEFENDANTS LACK THE REQUISITE "GOOD CAUSE" TO AMEND THEIR ANSWER AFTER THE DEADLINE.

### A. The Rule 16(b) "Good Cause" Standard Applies, and Focuses on Diligence, Not Prejudice.

Much of Defendants' Memorandum of Law discusses the Federal Rule of Civil Procedure 15(a) standard for granting leave to amend. However, the more stringent Federal Rule of Civil Procedure 16(b) standard applies here because Defendants are requesting leave to amend after they have missed a deadline imposed by the Court's scheduling order. Fed R. Civ. Proc. 16(b); *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000); *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007).

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Hnot v. Willis Group Holdings Ltd.*, No. 01 CV 6558, 2006 WL 2381869, *3 (S.D.N.Y. April 17, 2006)(citation omitted.) There is nothing "remotely unreasonable or unjust in holding [parties] to major deadlines in a case management plan" that the parties initially proposed. *Id. at* *5. Thus under Rule 16(b), a scheduling order may only be modified upon a showing of "good cause," which requires '[t]he party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Stover v. Northland Group, Inc.*, No. 05-CV-0476E, 2007 WL 1360603, *1 (W.D.N.Y. May 8, 2007); *Lincoln v. Potter*, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006).

The Rule 16(b) "good cause" standard focuses on diligence, not prejudice. *Stover*, 2007 WL 1360603, *3 (W.D.N.Y. May 8, 2007). When, like here, the party requesting an extension has not demonstrated its diligence, a court need not consider whether the party opposing the extension has been prejudiced. *Id. Lincoln v. Potter*, a case cited in Defendants' memorandum

2

of law succinctly explains: "If [a] party was not diligent, the [good cause] inquiry should end." 418 F. Supp. 2d at 454 (citations omitted)(bracketed text in *Lincoln*); *see also Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.* 215 F.R.D. 100, 104 (S.D.N.Y. 2003)(same).[1]

### B.   Defendants Were Not Diligent Prior to the July 30, 2007 Deadline.

On May 8, 2007, Defendants and Red Bull jointly submitted a proposed scheduling order, requesting a July 30, 2007 deadline to file motions to amend the pleadings.  (Declaration of Karen Marchiano in Support of Red Bull's Opposition To Motion For Leave to Amend, "Marchiano Dec." at ¶ 5, Ex. B).  On May 17, 2007, the Court entered a scheduling order, setting a deadline of July 30, 2007 to file motions to amend the pleadings.  (*Id.* at ¶ 7)

Although Defendants accepted service of the Complaint on March 2, 2007, Defendants served no written discovery until October 30, 2007.  (*Id.* at ¶¶ 3, 17)  Defendants similarly requested no depositions until November 8, 2007.  (*Id.* at ¶ 19)  Indeed, until September 25, 2007, Defendants did not even request that Red Bull produce the documents identified in Red Bull's initial disclosures.  (*Id.* at ¶ 11)  In short, Defendants were not diligent prior to the July 30, 2007 deadline for amending the pleadings.[2]

---

[1] Defendants' Memorandum of Law cites an earlier order issued by Judge Lynch in *Hnot* for the proposition that courts should focus "on the diligence of the moving party and may also consider such factors as the reasons for delay, the interests of justice to be served by the amendment, considerations of judicial efficiency, and any prejudice to the opposing side." (Memorandum, p. 5)  By 2006, Judge Lynch appears to have more narrowly focused on diligence:

> "even if compelling discovery imposed only a modest burden, the lack of good cause to amend the [scheduling order] would be sufficient to justify the Court's holding. *See LaFlamme,* 220 F.R.D. at 186 ( " '[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.")"

*Hnot v. Willis Group Holdings Ltd.* , No. 01 CV 6558, 2006 WL 2381869, *5 (S.D.N.Y. 2006).

[2] In addition, after Red Bull produced the initial disclosure documents that are the purported basis for Defendants' motion, Defendants waited more than a month to provide Red Bull with their proposed amended answer.  (Marchiano Dec. at ¶¶ 12, 18)

Early in this litigation, Defendants repeatedly missed court-imposed deadlines. For example, although Judge Telesca ordered Defendants to file and serve a report by April 23, 2007 setting forth their compliance with the preliminary injunction, Defendants did not file or serve their report until May 15, 2007. (Marchiano Dec. at ¶¶ 4, 6) Similarly, Defendants missed the court imposed deadline for initial disclosures, and then provided initial disclosures with extremely limited information. (*Id.* at ¶¶ 7, 9) Later, Defendants were tardy providing responses to Red Bull's first set of written discovery. (*Id.* at ¶ 10)

Unfortunately, Defendants' failure to diligently conduct discovery and meet court deadlines appears to reflect Defendants' cavalier attitude, at least until recently, towards this lawsuit. Before the litigation, Red Bull sent warning letters addressed to Mr. Davis on August 19, 2003; May 10, 2005; and March 27, 2006 and met with Mr. Davis in person on July 21, 2003 and April 7, 2005, to notify Defendants of the passing off that had been observed at Defendants' bars. (Marchiano Dec. at ¶ 2, Ex. A: Complaint at ¶¶ 16, 22, 40; Marchiano Dec. at ¶ 16, Ex H: Requests No. 1,4, 6, Ex. I: Responses No. 1 and 4). Defendants ignored these repeated warnings. During one meeting, Mr. Davis told the Red Bull representative that no one knew the difference between a competitor product and RED BULL®. (Marchiano Dec. at ¶ 2, Ex. A: Complaint at ¶ 16) Mr. Davis was defiant, acknowledging that he had received a letter from Red Bull but stating that he would not get in trouble because he had not advertised RED BULL®. (*Id.*) Mr. Davis stated, "If a customer asks for a Coke, you give them a drink. You never tell them we don't have Coke. You just give them a drink." (*Id.*) Even after this litigation was filed, Mr. Davis continued to treat this lawsuit like a "joke," as he told a Democrat and Chronicle reporter that "Frivolous lawsuits are an ongoing thing in my business and it's just part of the day-to-day operations…In my mind, it's a joke." (Marchiano Dec. at ¶ 16: Ex H: Requests No. 14, 15; Ex I: Responses No. 14, 15)

At least before this lawsuit was filed, Defendants failed to take appropriate action to stop the passing off. For example, Defendants admit they did not (a) notify their employees in writing or orally to identify the type of energy drink sold if a customer requests "Red Bull", (b)

require their employees to acknowledge in writing the requirement that they notify customers of the type of energy drink sold if a customer requests "Red Bull"; or (c) place signs at their establishments identifying the type of energy drink sold.  (Marchiano Dec. at ¶¶ 20-24, Ex. J-N: Response to Interrogatories No. 10 and 11).   Upon Defendants' admission, before this lawsuit was filed, the only action Defendants took to prevent passing off was to use "energy drinks other than "RED BULL®"" that were clearly evident to the customer."[3]   (*Id.*).

As a result, Defendants' bartenders routinely passed off another drink in response to orders for RED BULL®.  Red Bull's employees and investigators observed this.  (Marchiano Dec., ¶ 2, Ex. A: Complaint at ¶¶ 17-21, 24-39, 41-56).  Defendants' bartenders admitted this during deposition.  (Marchiano Dec., ¶ 13, Ex. E: Groth Transcript at 47:2-49:12; Ex F: Garbacz Transcript at 35:14-36:1, 37:5-24; Ex G: Pace Transcript at 24:3-17).  In addition to not informing customers, Defendants' bartenders also verbally affirmatively represented that drinks were being made with RED BULL® when they were not. (Marchiano Dec. at ¶ 2, Ex. A: Complaint at ¶¶ 18, 34, 36, 47, 54, 55.)

---

[3] Discovery has already revealed that the brand of energy drink used to prepare customer drinks was not "clearly evident" to the customer.  Defendants served drinks out of a beverage gun, rather than cans, for extended lengths of time.  (Marchiano Dec. at ¶¶ 20-24, Ex. J-N: Response to Interrogatories No. 12 and 13.) Customers stood variable distances from where the drinks were prepared.  Some bartenders did not even know what brand of product they were serving.  Moreover, visual notice provided by cans or beverage guns is normally legally insufficient.  *See, e.g., Overland*, 692 F.2d at 1253 ("[O]ral explanations, and not signs, are normally required to notify customers adequately in beverage substitution cases."); *Coca-Cola Co. v. Dorris*, 311 F. Supp. 287, 289 (E.D. Ark. 1970) (The law does not place a burden on the customer to look for signs to ascertain what products are sold or are not sold in the retail outlet.  The customer must be orally advised that the specified product is not available and be given the opportunity to accept or reject the substitute product.)  Even if a customer saw his drink being prepared with a can of Mad Croc, the customer could still experience two types of actionable confusion: (1) initial interest confusion, where the customer was lured into buying Mad Croc because he initially believed he was going to receive RED BULL®, and (2) confusion as to whether Mad Croc was somehow affiliated, connected with, or sponsored by Red Bull.

### C.   Defendants Have Not Learned Anything New Since the July 30, 2007 Deadline That Would Provide Them With "Good Cause."

Defendants argue that there is "good cause" for granting them leave to amend because, "Defendants discovered evidence necessitating the amendment after the deadline in the Scheduling Order to amend the pleadings has passed."

However, Defendants' argument fails for four reasons.  First, most of the "new" information is not actually "new" - Red Bull's detailed initial disclosures provided most of the "new" information in May 2007, and Defendants had personal knowledge of much of this "new" information when they filed their original answer.  Second, Defendants would have received Red Bull's initial disclosure documents before July 30, 2007 if they had acted diligently by simply asking Red Bull for them. Third, many of the proposed affirmative defenses (such as the Third, Seventh, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses) do not even purport to rely upon the "new" information.  Finally, as detailed below in section III ("Leave to Amend Should Be Denied Because The Amendment Will Be Futile"), the "new" information does not provide the basis for a single valid affirmative defense.

### 1.   The "New" Information Is Not Actually "New."

On May 18, 2007, Red Bull timely served its initial disclosures, which included a detailed list of investigative reports and visit summaries of visits to Alexander Street Pub in July 2003, September 2003, October 2003, December 2003, and February 2004.[4]  (*Id.* at ¶ 8, Ex. C: Documents #3-5 and 33)  Red Bull's initial disclosures also listed an August 19, 2003 letter from

---

[4] Red Bull's initial disclosures listed:
- Document 3:  Investigative Report prepared by Confidential Business Resources, Inc. summarizing October 18, 2003 investigation of Alexander Street Pub (Rochester).
- Document 4:  Investigative Report prepared by Confidential Business Resources, Inc. summarizing December 20, 2003 investigation of Alexander Street Pub (Rochester).
- Document 5:  Investigative Report prepared by Confidential Business Resources, Inc. summarizing February 7, 2004 investigation of Alexander Street Pub (Rochester).
- Document 33:  Summaries of Ryan Guinta's July 12, 2003 and September 19, 2003 visits to Alexander Street Pub (Rochester), and Brett Bagley's September 20, 2003 visit to Alexander Street Pub (Rochester).
- Document 38:  August 19, 2003 letter from Tom Tripi to Mr. Davis regarding the passing off of other products as RED BULL®.

(Marchiano Dec. ¶ 8, Ex. C)

Tom Tripi to Mr. Davis regarding the passing off of other products as RED BULL®.  (*Id.* at ¶ 8, Ex. C: Document #38) Thus, when Defendants received Red Bull's initial disclosures in May 2007, they knew that Red Bull had been investigating Defendants since at least July 2003. Indeed, Defendants knew this even before Red Bull served its initial disclosures, as Mr. Davis personally met with Red Bull employees in 2003 and 2005 about the passing off issue, and admits he received warning letters from Red Bull in 2003 and 2005.  (Marchiano Dec. at ¶ 2, Ex. A: Complaint at ¶¶ 16, 22, 40; Marchiano Dec. at ¶ 16, Ex H: Requests No. 1,4, 6, Ex. I: Responses No. 1 and 4).

Defendants focus on an email between two Diamond Beverage employees, which begins, "I met with Ronnie Davis today to try and get us back in his 4 bars."  (Exhibit L to Merkel Attorney's Affidavit)  As this email suggests, even before this lawsuit was filed, Defendants would have been aware of this effort, and indeed any active effort by Diamond Beverages, to sell RED BULL® to Defendants, as Defendants would have been part of this effort.

### 2.   Defendants Would Have Had Red Bull's Initial Disclosure Documents Before July 30, 2007 If They Had Acted Diligently By Simply Asking Red Bull For Them.

To the extent Defendants learned "new" information when they reviewed Red Bull's initial disclosure documents, Defendants should have learned this information before July 30, 2007.  Red Bull produced the initial disclosure documents three days after Defendants first requested them.  (Marchiano Dec. at ¶¶ 11, 12)  If Defendants had been diligent and requested the initial disclosure documents before July 30, 2007, Red Bull would have produced them before July 30, 2007.  (*Id.* at ¶ 11)  Because Defendants were not diligent, they are not entitled to a change in the scheduling order.

Thus, the situation differs from *Lincoln v. Potter*, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006) and *Robinson v. Town of Colonie*, No. 91-CV-1355, 1993 WL 191166, at * 3 (N.D.N.Y June 3, 1993), the cases cited by Defendants for the proposition that "Defendants discovered evidence necessitating the amendment after the deadline in the Scheduling Order to amend the pleadings had passed."  In *Lincoln and Robinson,* the courts granted the parties leave to amend

7

based on information that was simply not available, even if the parties acted diligently, before the deadline on the scheduling order had passed. *See Lincoln*, 418 F. Supp. 2d at 446-447, 454 (allowing plaintiff to amend his complaint to include a new cause of action for retaliation because the retaliatory events occurred *after* the deadline for amendments in the scheduling order had passed);[5] *Robinson*, 1993 WL 191166, *2-*3 (allowing plaintiffs to amend their complaint to correct a mistake they first learned of *after* the deadline had passed in the scheduling order, where plaintiffs had no reason to know of their mistake before then.) By contrast, here the information would have been available to Defendants if they had acted diligently.[6]

## II.   DEFENDANTS UNDULY DELAYED IN SEEKING LEAVE TO ASSERT THEIR PROPOSED AFFIRMATIVE DEFENSES, AND RED BULL WILL BE UNDULY PREJUDICED IF THE AMENDMENT IS ALLOWED.

Even if Defendants somehow satisfy the 16(b) "good cause" requirement, leave should still be denied on the basis of the Rule 15(a) factors of undue delay, undue prejudice to the opposing party, and futility of amendment. *See Lincoln,* 418 F.Supp.2d at 454.

### A.   Defendants Unduly Delayed In Seeking Leave To Assert Their Proposed Affirmative Defenses.

Defendants unduly delayed in seeking leave to assert affirmative defenses that are based on information that was available to Defendants, or would have been available to Defendants if

---

[5] The *Lincoln* court denied the plaintiff leave to amend his complaint to assert a new cause of action for hostile work environment because plaintiff knew the facts underlying his claim "well before the deadline for amendments in the Courts' Scheduling Order" and did not explain why the deadline set forth in the Court's Scheduling Order could not be met. 418 F. Supp. 2d at 446-447, 454.

[6] Defendants do not argue that they have demonstrated the requisite "good cause" for changing a scheduling order, simply because they decided in the sixth month of litigation to change counsel. If they had made such an argument, it would have failed. *See Lorillard Tobacco Company v. Yazan's Service Plaza, Inc.,* No. 05-70804, 2006 WL 2460766, *3 (E.D. Mich. August 23, 2006) (change in counsel representing defendant was not good cause to amend the scheduling order); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671, 676 (C.D. Cal. 2003)(change in counsel did not provide good cause to amend a scheduling order even though previous counsel had conducted no discovery and had some overdue discovery responses); *Link v. Wabash R. Co.,* 370 U.S. 626, 633-634 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client…[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.")

they had acted diligently, before the July 30, 2006 deadline.  Defendants should therefore be denied leave to amend, particularly with respect to the Third, Seventh, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses, which do not even purport to be based on "new" information. *See Invest Almaz v. Temple-Inland Forest Products Corp.*, 243 F.3d 57, 72 (1st Cir. 2001) ("[w]hat the plaintiff knew or should have known and what he did or should have done are relevant to the question of whether justice requires leave to amend under this discretionary provision.")

> **B.     Red Bull Will Be Unduly Prejudiced If The Amendment Is Allowed.**

Because Defendants were not diligent, Defendants should be denied leave to amend, without any inquiry about prejudice.  *Lincoln*, 418 F. Supp. 2d at 454.  Nevertheless, Red Bull would be prejudiced by Defendants' late amendment which would (i) require Red Bull to expend significant additional resources to conduct discovery and prepare for trial; and (ii) significantly delay the resolution of the dispute. *See Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993).

> **1.     If Amendment Is Allowed, Red Bull Will Be Required To Expend Significant Additional Resources To Conduct Discovery And Prepare For Trial.**

This action has been pending for approximately nine months.  Plaintiffs' original answer contained two affirmative defenses: failure to state facts sufficient to constitute a claim, and Plaintiffs' mark had "passed into the public domain through popular usage."  (Ex. A to Merkel Attorney's Affidavit)  Until this amended answer arose, this has been a fairly simple lawsuit that did not require protracted and expensive discovery.  Red Bull owns the registered trademark RED BULL.®  When a customer orders "RED BULL®" at a bar that does not carry RED BULL®, that customer must be informed that RED BULL® is not available, and cannot just be served a substitute drink without comment.  Defendants' bartenders were not following the law.  Private investigators observed this.  Bartenders admitted this in deposition.  In short, for the last nine months, this has been a simple lawsuit about Defendants' conduct.

The new affirmative defenses, particularly the defense of unclean hands, will serve to dramatically broaden the scope and cost of discovery, motion practice, and trial.  Instead of the relatively narrow discovery currently focused on a handful of bars in Rochester, Defendants are attempting to take discovery relating to Red Bull's national practices, including what Defendants have amorphously alleged as Red Bull's "anti-competitive marketing strategy engaged in as an effort to minimize the decrease of Plaintiff's market share in the energy business nationally." Red Bull will be substantially prejudiced by a dramatic broadening in the scope of this erstwhile simple litigation.  *See De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*. No. 04-CV 4099, 2005 WL 1164073, *4 (S.D.N.Y. May 18, 2005) ("[T]he prejudice the plaintiffs will suffer from inclusion of the affirmative defense is substantial. The existence of a defense based on, among other things, alleged international price fixing and 'securing the cooperation of oppressive regimes to obtain access to diamond rich land' will fundamentally alter the scope of discovery in a case that would otherwise involve a relatively narrow set of issues.")

### 2.      If Amendment Is Allowed, The Resolution Of The Dispute Risks Significant Delays.

Broadening the scope of discovery to include the new affirmative defenses risks delaying the resolution of the dispute.  If Defendants are allowed to belatedly assert new affirmative defenses, Red Bull will need to conduct written discovery and depositions on these new affirmative defenses.  Moreover, Red Bull may require substantial time to respond to broad discovery regarding the new affirmative defenses, and to produce witnesses in multiple locations throughout the nation. To accommodate a mediation, the Court has entered an order extending the close of fact discovery until the end of February 2008 and postponing any further depositions until after the January 22, 2007 mediation.  (Marchiano Dec., ¶ 25, Ex. O).  Given the amended scheduling order, with its motion to compel and fact discovery cutoffs, neither party will have the opportunity to follow up on post-mediation depositions with written discovery or a motion to compel.  Further extending the discovery and other deadlines to accommodate this additional discovery would only reward Defendants for their delay.

In addition, the federal and local rules limit the number of document requests and interrogatories. On July 2, 2007, Red Bull served written discovery that targeted the issues in the litigation as they existed at the time of the original answer. (Marchiano Dec., ¶ 10). Red Bull did not "save" written discovery to target the new affirmative defenses, because it did not know in July that Defendants would attempt to assert these defenses four months later.

## III.   LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE AMENDMENT WILL BE FUTILE.

A court should deny leave to amend where it appears that granting leave to amend is unlikely to be productive. *See, e.g., Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("where ... there is no merit in the proposed amendments, leave to amend should be denied"). The amendment will be deemed futile, and the motion to amend denied, where the amended pleading would be subject to "immediate dismissal" for failure to state a claim upon which relief can be granted, or on some other basis. *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979).

### A.   Defendants' Unclean Hands Bar Their Proposed Equitable Defenses.

A party asserting equitable defenses must itself have clean hands. *Hermes Intern. v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2d Cir. 2000). An infringer claiming an equitable defense "must be able to demonstrate the absence of any intent to confuse and deceive the public; there must be a lack of evidence showing a scheme to 'foist upon the public the (products) of the defendant as those of' the plaintiff." *Cuban Cigar Brands N. V. v. Upmann Intern., Inc.*, 457 F. Supp. 1090, 1098 -1099 (S.D.N.Y. 1978), aff'd without op., 607 F.2d 995 (2d Cir. 1979). "[I]ntentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities." *Hermes.,* 219 F.3d at 107. Here, as the facts described on pages 4-5 of this Memorandum demonstrate, Defendants willfully passed off other energy drinks as RED BULL[®]. Defendants' proposed equitable defenses of laches and unclean hands are therefore barred.

**B.     Defendants' Actions Are Not A Fair Use Of The RED BULL® Trademark (Third Affirmative Defense).**

The fair use defense only applies if Defendants used the RED BULL® trademark (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.  *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,  228 F.3d 56, 64 (2d Cir. 2000).  Defendants' fair use defense fails because Defendants used the RED BULL® mark in a trademark, not descriptive sense, and did not use the mark in good faith.

A use can be "descriptive" where the alleged infringer uses the literal words of the trademark to describe certain aspects of the alleged infringer's own goods, or to describe an action the alleged infringer hopes consumers will make of its product.  *Id.* at 64-65.  For example, in the *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.* case cited by Defendants, the court considered whether the alleged infringer had used the term "sweet-tart" descriptively to describe juices that had elements of both sweetness (because they contained sugar) and tartness (because they contained cranberries).  64 F. 3d 1055, 1058-1059 (7th Cir. 1995).  Similarly, *in Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F. 3d 28 (1997), the other case cited by Defendants on the "fair use" issue, the alleged infringers used the term "Seal it with a Kiss" in a descriptive, non-trademark way, to invite consumers to "seal" or imprint a complimentary postcard with a kiss from the consumers' lips.

By contrast, Defendants are not using "RED BULL®" in a descriptive sense to identify a ruby-colored male bovine.  The energy drinks Defendants serve are not even red - they're yellowish in color.  "RED BULL®" does not describe the drinks that Defendants are serving.  Instead, "RED BULL®" identifies the source of RED BULL® Energy Drink.  In short, Defendants are infringing Red Bull's trademark, not making a fair use of the words "Red Bull."  *See, e.g.*, *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1252 (9th Cir. 1982) ("Overland does not seriously dispute that its employees have on occasion substituted Pepsi-Cola, without comment, in response to orders for "Coca-Cola" or "Coke."  Taken alone, such conduct by Overland's employees appears to present a clear-cut case of trademark infringement and unfair competition."); *Coca-Cola Co. v. Dorris*, 311 F. Supp. 287, 289 (E.D. Ark. 1970) ("Defendant's

substitution of another product in response to a request for plaintiff's trademarked product "Coke" or "Coca-Cola", without verbal notice to the purchaser that the product served was not in fact that of the plaintiff … is called palming off, passing off or substitution.  Such acts are an infringement of plaintiff's lawfully registered trademarks and are unfair competition.")

Moreover, as the facts described on pages 4-5 of this Memorandum demonstrate, Defendants intended to trade on the RED BULL® mark, and their use was therefore not "in good faith."  *See EMI Catalogue*, 228 F.3d at 66 ("Any evidence that is probative of intent to trade on the protected mark would be relevant to the good faith inquiry.")

### C.   Red Bull's Hands Are Clean (Fourth Affirmative Defense).

There is no doubt that Defendants passed off another drink in response to orders for RED BULL®.  Red Bull's investigators and employees observed this.  (Marchiano Dec., ¶ 2, Ex. A: Complaint at ¶¶ 17-21, 24-39, 41-56).  During depositions, Defendants' bartenders admitted this. (Marchiano Dec., ¶ 13, Ex. E: Groth Transcript at 47:2-49:12; Ex F: Garbacz Transcript at 35:14-36:1, 37:5-24; Ex G: Pace Transcript at 24:3-17).  Given Defendants' conduct, an unclean hands defense is not a valid defense.  *See, e.g., Overland, Inc.*, 692 F.2d at 1257 ("we have found no case directly supporting the proposition that the bringing of meritorious suits can constitute sham suits violative of the antitrust laws. Moreover, the validity of such a proposition appears questionable in light of the existing case law.");  *Alberto-Culver Company v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) ("plaintiff's good faith effort to enforce its copyright and trademark is not the kind of exclusionary conduct condemned by § 2 of the Sherman Act").

Red Bull has acted appropriately to protect the public and its own massive investment in the RED BULL® mark.  Passing off by definition cannot occur while a bar is exclusively carrying RED BULL®.  Therefore, it is not surprising that Red Bull learned Defendants were passing off after Defendants stopped carrying RED BULL®.  When Red Bull discovered that Defendants were passing off other products as RED BULL®, Red Bull did not immediately rush to court, burdening the court and Defendants.  Instead, Red Bull met with Defendants and sent Defendants a letter in an effort to encourage Defendants to cease their infringing behavior.

(Marchiano Dec. at ¶ 16, Ex H: Request No. 1, Ex. I: Response No. 1).  When Red Bull confirmed that the problem persisted, Red Bull met with Defendants a second time and sent Defendants a second letter.  (Marchiano Dec. at ¶ 2, Ex. A: Complaint at ¶¶ 16, 22; Marchiano Dec. at ¶ 16, Ex H: Request No. 4, Ex. I: Response No. 4).  Unfortunately, Defendants' conduct persisted, so Red Bull sent a third warning letter to Defendants.  (Marchiano Dec. at ¶ 2, Ex. A: Complaint at ¶ 40; Marchiano Dec. at ¶ 16, Ex H: Request No. 6).  Once Defendants ignored this third warning letter, Red Bull had no choice but to file this lawsuit, as nothing else would stop Defendants.  This lawsuit is based on a line of well-established beverage substitution cases. *See*, *e.g.*, *Overland,* 692 F.2d at 1252; *Dorris*, 311 F. Supp. at 289; *Coca-Cola Co. v. Old Country Road Diner, Inc.*, 172 U.S.P.Q. 219 (E.D.N.Y. 1971); *Coca-Cola Co. v. Pace*, 283 F. Supp. 291 (W.D. Ky. 1968); *Coca-Cola v. Foods, Inc.*, 220 F. Supp. 101, 103-104 (D.S.D. 1963).

Red Bull has not tried to prevent Defendants from purchasing any other energy drink. Nor has Red Bull made compliance with its requests impossible.  If Defendants choose not to serve RED BULL®, Defendants must simply ensure their employees respond to customer orders for "RED BULL®" by name by informing the customer that RED BULL® is not available, and then offering the customer the option of a substitute.  For example, if a customer ordered a "RED BULL® and Vodka," Defendants' bartenders could respond, "We don't have RED BULL.®  Is Energy Squared okay instead?"  This is not an impossible, lengthy colloquy.  It's simply what the law requires.  *See*, *e.g.*, *Overland, Inc.*, 692 F.2d at 1252 ; *Dorris*, 311 F. Supp. at 289. Defendants should be familiar with this practice, as they would have this obligation with respect to other products, like vodka and beer.

### D.   Red Bull Brought Its Lawsuit Within the Six Year Statute of Limitations (Sixth Affirmative Defense).

The six year fraud statute of limitations applies to Red Bull's Lanham Act claims, as well as Red Bull's claim for unfair competition.  *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) (applying six year statute to Lanham Act claim based on misleading advertisement); *Margaret Wendt Foundation Holdings, Inc. v. Roycroft Associates,* No 01-CV-74C, 2007 WL 3015224, *7 (W.D.N.Y. October 12, 2007)(applying six year statute to Lanham

14

Act trademark infringement claims); *Toyota Jidosha Kabushiki Kaisha v. Aliments Lexus Inc.*, 02-CV-0013,  2004 WL 1304054, *5 (E.D.N.Y. June 14, 2004)(accord).[7]

Moreover, even if there were a shorter statute of limitations, it would not bar Red Bull's claims because unfair competition and trademark infringement are continuing torts, preventing the statute of limitations from running while the infringement continues.  *De Medici v. Lorenzo De Medici, Inc.*,  101 A.D.2d 719, 720, 475 N.Y.S. 2d 391, 392-393 (N.Y.A.D. 1 Dept. 1984); *Kwan v. Schlein*, 441 F.Supp.2d 491, 503 (S.D.N.Y. 2006); *Fourth Toro Family Ltd. Partnership v. PV Bakery, Inc.,*  88 F.Supp.2d 188, 196 (S.D.N.Y. 2000).  In addition, each incident of passing off may be treated as a separate incident separately triggering its own statute of limitations. *See Carell v. Shubert Organization, Inc.*, 104 F.Supp.2d 236, 260 (S.D.N.Y. 2000) (even though court did not view reverse palming off as a continuing wrong, court considered each reverse palming off violation as a distinct Lanham Act violation, triggering its own statute of limitations.)

### E.    Red Bull Pursued Its Claims in a Timely Manner And Is Not Barred By the Doctrine of Laches (Fifth Affirmative Defense).

Because Red Bull brought its lawsuit within the six year statute of limitations, the burden is on Defendants to show circumstances exist which require the application of the doctrine of laches.  *Conopco*, 95 F.3d at 191.  Defendants cannot meet this burden.

Mere passage of time cannot constitute laches. *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 704 (2d Cir. 1970). A laches defense requires (1) that Plaintiffs had knowledge of Defendants' use of Plaintiff's mark, (2) that plaintiff inexcusably delayed in taking action with respect to Defendants' use of their marks, and (3) that Defendants will suffer

---

[7] Defendants cite *Board of Managers of Soho International Arts Condominium v. City of New York*, 02-CV-1226, 2003 WL 21403333, *18 (S.D.N.Y. June 17, 2003) for the proposition that New York courts sometimes apply a three year statute to Lanham Act claims.  However, *Soho International* is addressing Lanham Act *anti-dilution* claims, which have a three year statute because they are closely analogized to New York statutory anti-dilution claims, which are themselves ruled by a three year statute.  *Soho International*, 2003 WL 21403333 at *18; *De Medici v. Lorenzo De Medici, Inc.*,  101 A.D.2d 719, 720, 475 N.Y.S 2d 391, 392-393 (N.Y.A.D. 1 Dept. 1984).  Red Bull has not asserted an anti-dilution claim, so there is no reason to apply the three year anti-dilution statute here.

prejudice if Plaintiffs are allowed to assert their right at this time.  *Tri-Star Pictures, Inc. v. Unger,* 14 F.Supp.2d 339, 360 (S.D.N.Y. 1998) (citation omitted).

### 1.    Red Bull Did Not "Inexcusably Delay In Taking Action."

Red Bull put Defendants on notice and took sufficient action to avert a defense of laches. Red Bull sent warning letters addressed to Mr. Davis on August 19, 2003; May 10, 2005; and March 27, 2006 and met with Mr. Davis in person on July 21, 2003 and April 7, 2005, to notify Defendants of the passing off that had been observed at Defendants' bars.  (Marchiano Dec. at ¶¶ 2, Ex. A: Complaint at ¶¶ 16, 22, 40; Marchiano Dec. at ¶ 16, Ex H: Requests No. 1,4, 6, Ex. I: Responses No. 1 and 4). In short, Red Bull did nothing to give Defendant the belief that Red Bull was going to "sleep on its rights." *See, e.g. Citibank, N.A. v. Citytrust,* 644 F.Supp. 1011, *1014 (E.D.N.Y. 1986) (court considered whether plaintiffs' actions during period of delay had put the defendant on notice that the plaintiff is not going to "sleep on its rights.")

*Tri-Star Pictures, Inc. v. Unger,* 14 F.Supp.2d 339 (S.D.N.Y. 1998) presents an analogous situation. There the owners of the rights to the movie "Bridge on the River Kwai" sued the producers of the movie "Return from the River Kwai," alleging trademark infringement, unfair competition, and other claims.  The *Unger* court rejected the application of laches, noting that Plaintiffs' warning letters sent to Defendants in 1978, 1984, 1987, and 1988 placed Defendants on notice of Plaintiffs' objections to his use of the title Return from the River Kwai, and constituted a "sufficient taking of action to avert [a] defense" of laches.  *Unger,* 14 F.Supp.2d at 360-361.  Indeed, the *Tri-Star Pictures* court noted that a single letter of warning could suffice to rebut a claim of delay and place an infringer on notice of a potential suit.  *Id.*

In addition, Red Bull actively defended its trademark rights in the 2003-2007 period, asserting trademark infringement claims in numerous lawsuits.  A trademark owner is not bound to take on more than one infringer at a time. *Cuban Cigar,* 457 F.Supp. at 1098.

### 2.    Defendants Were Not Prejudiced By Any Delay.

To prevail on the affirmative defense of laches, Defendants must prove they were prejudiced by an unreasonable delay in bringing the action. *Conopco,* 95 F. 3d at 192 (citations

omitted).  Specifically, prejudice ensues when a "defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed."  *Id.* (citations omitted).  Put differently, laches only applies when plaintiffs' actions during the passage of time have lulled the defendant into a false sense of security, and the defendant has acted in reliance thereon.  *Carl Zeiss,* 433 F.2d at 704.

Because Defendants' proposed affirmative answer does not include any allegations about prejudice, the amendment is futile and the Court should deny Defendants' leave to amend.  In their Memorandum of Law, Defendants appear to attempt to describe their prejudice on the second paragraph of p. 17.  However, Defendants have not been prejudiced because they have not taken any actions as a result of being lulled into a false sense of security.  For example, Defendants did not build up a business around Defendants' competing trademark or expend large amounts of money promoting Defendants' competing trademark.  *See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 365 F.Supp. 707, 718 (S.D.N.Y. 1973), *modified,* 523 F.2d 1331 (2d Cir. 1975).  Instead, Defendants describe general growth of their bars, do not attribute this growth to energy drinks specifically, and do not explain how Defendants would have acted differently if Red Bull had brought suit in 2003.

Moreover, as in *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F.Supp. 1339, 1357 (E.D.N.Y. 1994), where defendants received several warning letters for at least 3 years before the lawsuit was filed, here the only detriment the defendants face is the prospect of continuing their business without the benefit of Red Bull's substantial advertising and good will.  However, "this detriment is of no concern at all", for "[a]n infringing user who expands his or her business by exploiting the good will of another's service mark and by riding the coattails of the senior user's advertising and reputation does so at his or her peril."  *Id.*

### F.   Red Bull Is Entitled to the Damages It Seeks

#### 1.   Red Bull Is Entitled To Recover Monetary Damages (Eleventh Affirmative Defense).

Defendants assert "Plaintiffs' claims for monetary damages are barred as Plaintiffs cannot establish actual consumer confusion or that the Defendants engaged in willful deception."

However, regardless of whether Red Bull can prove any damages it has sustained, Red Bull is still entitled to recover Defendants' profits.  15 U.S.C.A. § 1117.

In addition, as the facts described in the Complaint and on pages 4-5 of this Memorandum demonstrate, actual confusion may be presumed here.  "Once it is shown that a defendant deliberately engaged in a deceptive commercial practice, we agree that a powerful inference may be drawn that the defendant has succeeded in confusing the public. Therefore, upon a proper showing of such deliberate conduct, the burden shifts to the defendant to demonstrate the absence of consumer confusion."  *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*,  926 F.2d 134, 140 (2d Cir. 1991); *Samara Bros., Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 127 (2d Cir. 1998), rev'd on other grounds in 529 U.S. 205 (2000).  The inference appears particularly appropriate here where at least one of Defendants' bartenders was actually confused about what energy drink brand he was serving; this bartender testified that he would not inform the customer of the energy drink brand "because not at all times would I know what it was nor would I ask."  (Marchiano Dec., ¶ 13, Ex. E: Groth Transcript at 48:18-49:12.)  In addition, Red Bull will seek additional evidence of actual confusion during discovery.

## 2.  Red Bull Is Entitled To Punitive Damages (Eighth Affirmative Defense).

Defendants' discussion of punitive damages on pages 17-18 of their Memorandum of Law focuses on Red Bull's Lanham Act claims, and ignores Red Bull's common law claim for unfair competition.  Punitive damages are available for unfair competition under New York common law where a "defendant's conduct has constituted 'gross, wanton, or willful fraud or other morally culpable conduct' to an extreme degree." *See Getty Petroleum Corp. v. Island Transp. Corp.*,  878 F.2d 650, 657 (2d Cir. 1989)(citations omitted); *New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F.Supp. 295, 304 (N.D.N.Y. 1996)(citations omitted).  In the context of a claim for unfair competition, "New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, ... whether or not directed against the public generally...." *Getty,* 878 F.2d at 657 (citations omitted).  Thus, for example, in the

*Getty* case, the court awarded punitive damages where defendant sold non-Getty gasoline under the Getty trademark. Here, as the facts described on pages 4-5 of this Memorandum demonstrate, Defendants' conduct rises to the level justifying punitive damages.

**a)      Red Bull Is Entitled To Attorneys' Fees And Costs
(Ninth Affirmative Defense).**

Without citing any authority or making any argument, Defendants propose a Ninth Affirmative Defense which states that "Plaintiffs' claims for attorneys' fees and costs are barred as Plaintiffs cannot establish bad faith or fraud."

Defendants' affirmative defense misstates the law.  The Lanham Act authorizes the award of attorney's fees to prevailing parties in "exceptional cases," including instances of fraud or bad faith, as well as cases involving intentional, deliberate, or willful infringement.  15 U.S.C.A. § 1117; *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003)(stating rule); *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir. 1995)(awarding attorneys fees where the infringement was "willful"); *McGraw-Hill Companies, Inc. v. Vanguard Index Trust,* 139 F.Supp.2d 544, 556, fn 6 (S.D.N.Y. 2001), aff'd 27 Fed Appx 23 (2d Cir. 2001) ("exceptional" cases generally involve "intentional, deliberate or willful infringement").  As the facts described on pages 4-5 of this Memorandum demonstrate, Red Bull will be able to prove its entitlement to attorneys fees.

**3.      Regardless Of How Red Bull Markets Its Product, Red Bull
Has Been Damaged By Defendants' Conduct (Seventh
Affirmative Defense).**

Without citing to any authority or offering any explanation, Defendants claim that Red Bull has not been damaged by Defendants' alleged conduct, because Plaintiffs do not market RED BULL® as a product to be combined with alcoholic beverages. Regardless of whether Red Bull can prove any damages it has sustained, Red Bull is still entitled to recover Defendants' profits.  15 U.S.C.A. § 1117.

The sales of RED BULL® are impacted by Defendants' conduct, regardless of how Red Bull markets RED BULL®.   For example, customers who had a negative reaction to drinks they were defrauded into thinking were RED BULL® may not purchase RED BULL® in the future,

19

decreasing Red Bull's future profits.  Moreover, the RED BULL® trademark is itself harmed by Defendants' conduct, regardless of how Red Bull markets RED BULL®.

     **G.**    **RED BULL® Is A Protected Trademark, Even When RED BULL® Is Ordered With Another Beverage (Tenth Affirmative Defense).**

Without citing any authority, Defendants assert, "Plaintiffs' claims are barred because Plaintiffs do not have any trademark protection covering the drink combinations allegedly ordered by Plaintiffs' investigators."  Defendants do not explain why the RED BULL® trademark loses its protection simply because RED BULL® is ordered with something else.  Under Defendants' interpretation of the law, it would appear that if a customer orders a "Grey Goose and RED BULL®," Defendants may simply serve the customer a well vodka with any brand of energy drink they choose.  Indeed, under Defendants' interpretation of the law, it is unclear whether a restaurant may serve a customer any brand of energy drink when the customer orders a "hamburger and RED BULL®."  This is simply not a correct interpretation of the law.  Instead, when a customer orders a trademarked beverage, he must be served that trademarked product or be informed otherwise.  *See*, *e.g.*, *Overland, Inc.*, 692 F.2d at 1252; *Dorris*, 311 F. Supp. at 289.

**IV.**    **CONCLUSION**

For the foregoing reasons, Defendants' motion should be denied in its entirety.

Dated:  December 14, 2007         SONNENSCHEIN NATH & ROSENTHAL LLP

                           By:     /s/ Karen C. Marchiano
                           Karen C. Marchiano
                           Counsel for Plaintiffs Red Bull North America, Inc. and Red Bull GmbH Limited Liability Company
                           Admitted *Pro Hac Vice* for this matter
                           Sonnenschein Nath & Rosenthal LLP
                           One International Place, 3rd Floor
                           Boston, MA 02110
                           Phone: (617) 235-6807
                           Fax: (617) 235-6899
                           kmarchiano@sonnenschein.com

Michael E. Pappas
Admitted *Pro Hac Vice* for this matter
Sonnenschein Nath & Rosenthal LLP
601 S. Figueroa Street, 25th Floor
Los Angeles, California 90017
Phone: (213) 623-9300
Fax: (213) 623-9924
mpappas@sonnenschein.com

Michael J. Masino, Esq.
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, New York 14534
Telephone:  (585) 419-8624
Fax:  (585) 419-8813
mmasino@harrisbeach.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 14, 2007 I served a true and correct copy of the
foregoing document (RED BULL'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWER) via ECF to:

| | |
|---|---|
| Elizabeth Wolford<br>Sarah Merkel<br>Jennifer Neufer<br>The Wolford Law Firm LLP<br>600 Reynolds Arcade Building<br>16 East Main Street<br>Rochester, NY 14614<br>Tel: 585-325-8000<br>Fax: 585-325-8009 | |

        /s/ Karen C. Marchiano
        Karen C. Marchiano

.17582862\V-1